## Newbold *et ux. versus* Boone.

1. If two clauses in a will are irreconcilable, the latter is to be adopted as the latest expression of the testator's mind; but this is not to be done if it be possible to give effect to both consistently with the main design of the testator.

2. It should appear that the repugnant clauses have relation to the same subject-matter. Per WOODWARD, P. J.

3. An obscure will construed, and apparently repugnant clauses reconciled.

ERROR to the Court of Common Pleas of *Berks county.*

This was an amicable action between Alexander E. Newbold and Mary Agnes his wife (formerly Souder), and Richard Boone. The question arose under the will of Jacob W. Seitzinger, who died in November 1850; the will was proved December 2d 1850.

The testator left his widow and six children. He also left two grandchildren, Jacob S. Souder and Mary Agnes Souder, children of a deceased daughter, Ann Ellen Souder, whose husband, John H. Souder, is still living. Jacob S. Souder died in December 1859, a minor, intestate, unmarried and without issue. Mary Agnes, his sister, was a minor at his death, but is now of age, and was married in December 1860. The question is as to the provision made in the will for the Souder grandchildren.

After making provision for his widow, a sickly child and other grandchildren, he devised and bequeathed to Richard Boone, David F. Gordon and William Wetherill, in trust, all the real and personal estate given to his daughters and grandchildren, and afterwards declares that Richard Boone should be the sole trustee during his life.

Also, "I bequeath thirteen thousand dollars, to be raised out of my residuary estate, after the payment of my debts, in the manner hereinafter directed, to the same trustees, in trust for the uses, intents and purposes hereinafter declared of and concerning

the portion of my estate, hereinafter designated as the share of my granddaughter Mary Agnes Souder, and I bequeath eleven thousand dollars, to be raised in like manner, out of my residuary estate, to the same trustees, to be held by them in trust for my grandson, Jacob Seitzinger Souder, *and to be paid to him when he shall have attained the age of twenty-one years, subject in the mean time to the provisions hereinafter contained of and concerning the same.*"

His final residuary estate he disposed of as follows :—

" That is to say, two equal twelfths to each of my two sons respectively and their representative heirs, two such twelfths to the trustees of each of my said daughters Margaret Adelia, Mary Agnes, and Emma Belinda's respective shares of my estate. / One such twelfth to the trustees of the said Mary Agnes Souder's share, and one such twelfth to the trustees to whom I have hereinafter bequeathed $11,000 in trust for the said Jacob Seitzinger Souder, to be held in trust for his use, in the manner hereinafter declared. The designation in this my will of the respective portions, or any portions or parts of my estate, as the shares of my respective children and grandchildren, is not to be construed as enlarging or in any manner defining the duration or character of their respective interests as the same are hereinafter specified. The share of my said grandson, Jacob Seitzinger Souder, of and in my whole estate, including as well the particular bequest of $11,000 as his share of the said final residue, shall be held by the trustees above named for the use of the said Jacob Seitzinger Souder, his heirs, executors, administrators and assigns, subject during his minority to the provisions hereinbefore and hereinafter contained; and to be paid, conveyed and transferred to him, his heirs, executors, administrators and assigns, on his attaining the age of twenty-one years. If any or either of my said children or two last-named grandchildren should die without issue living at his, her or their respective deaths, or leaving such issue then living, none of whom shall live to attain the age of twenty-one years, then and in any and every such case, it is my will that the shares or portions of my estate, of him, her or them, so dying shall go to increase the said shares of my other children except my daughter Elizabeth, and two last-named grandchildren in the last-mentioned proportions ; that is to say, the share of each of my said children, other than Elizabeth, to be twice as great as those of my said two grandchildren, the children of my deceased daughter ; under and subject in such cases to the same respective trusts and limitations hereinbefore expressed and declared. It is my will, that the subjects of all and every devise and bequest specific, particular, general or residuary hereinbefore contained to or in trust for or in favour of any child or children or issue of my deceased daughter, Ann Ellen Souder, shall upon the death intestate of any such

child or issue of the said Ann Ellen, in the lifetime of her husband John K. Souder, pass to and vest in such person or persons, and for such estate or estates as would then have taken or been entitled to the same, if my said daughter had lived until then, and had then died the absolute owner of the same a widow and intestate. None of the provisions of my will hereinbefore contained, commencing with the words ' I devise and it is my will, that so far as may be legally practicable, my family shall after my death,' and ending with the words ' if my said deceased daughter had lived until then and had then died, the absolute owner of the same, a widow and intestate,' shall so operate as to prevent any alienation or disposition or transfer that might otherwise have been made by deed or will or otherwise howsoever by any devisee or legatee or party interested under my will, but all or any conveyances, assurances, transfers and dispositions shall be as effectual and indefeasible in favour of any purchasers, alienees or transferrees, their heirs, executors, administrators and assigns, as if no such provision had been contained in my will."

The testator also says : " I desire, and it is my will, that, so far as it may be legally practicable, all my family shall after my death stand on the same footing as if I had been formally married to my said wife before the birth of any of our said seven children."

Also, " So far as the rules of law against what are legally denominated perpetuities may permit, I desire to prevent the possibility of the occurrence of any escheat of my estate, real or personal, which would not have occurred or taken place, if all my said children had been born in wedlock,"—and provides that the estates of his children and grandchildren " shall then and thereupon pass to and vest in such person or persons as would then have been entitled to the same if all my said children had been begotten by me of my said wife after our marriage, and as if *I* had lived until such time or times, and had then died owner of the same."

Boone, the defendant, has in his hands, as trustee, the legacy of $11,000, and a part of the residuary estate bequeathed to Jacob S. Souder. By the case stated, it is agreed, " If the said Mary Agnes Newbold is entitled to the legacy or legacies bequeathed to the said Jacob Seitzinger Souder, or any part thereof, the court to enter judgment accordingly in favour of the plaintiff, and if she is only entitled to the interest thereof or the interest of a part thereof, the court are to enter judgment accordingly (amount to be hereafter ascertained by the parties), otherwise judgment to be entered in favour of the defendant."

The court below (W. J. Woodward, P. J.) delivered the following opinion. After stating the facts, he says :—

" The leading question is whether, under the will of her grandfather, the claim can be sustained.

" No difficulty would have arisen in the construction of this

will if the last-recited clause had been omitted. It appears clearly that the testator intended, after making special provision for his daughter Elizabeth, to divide his estate between his three other surviving daughters, his two sons and the children of his deceased daughter, Mrs. Souder, those children taking together a share equal to that of each son and each surviving daughter. It appears with equal certainty by the general terms of the will, that he designed, upon the death of one of his grandchildren under the age of twenty-one years, to give the share of such grandchild to the surviving grandchild and to his own children, the share of each of the latter being double that of the former. It is said on the part of the plaintiffs, that the language of the concluding quoted clause is so definite and significant as to require, in the event that has occurred, that this second intention should be disregarded and set aside. But it can hardly be claimed that the testator evinced any purpose to change the limitations he had' provided for the devolution of his estate. He left those limitations to become operative in the event of the death of his son-in-law occurring previously to the death of the grandchildren. And thus we would have, upon the view of the case urged by the plaintiffs, a limitation to one grandchild of the whole share of the other, provided that other should die in the lifetime of John K. Souder, whereas, if the death of the grandchild should occur after the decease of Mr. Souder, the same share would be limited to the surviving grandchild and his or her uncles and aunts. The result would be, in the division of an estate of $11,000, that in the one case, the surviving grandchild would take the whole, and in the other would take $1000, while each of the uncles and aunts would take $2000. Upon the death of both the grandchildren subsequently to the decease of their father, in their minority, there would be no doubt of the right of the sons and daughters to take their shares under the limitations of the will. But upon their death in their father's lifetime, whither would the shares go ? Perhaps to their heirs under the intestate laws, including uncles and aunts on their father's as well as their mother's side—perhaps to the heirs under the intestate laws, of Mrs. Souder, including the testator's daughter Elizabeth. In either event the object of the will would be frustrated.

" In the judgment of the court, the clause which raises this question contemplated no results like these. It was simply designed to exclude John K. Souder from participation in any distribution of the estate. To give it the construction claimed for it, would destroy the entire symmetry and subvert the whole plan of the will. It is the duty of the court to carry all of the intentions of the testator into effect, when they can be clearly ascertained. If the last clause stood alone, and could be aided by reference to no other provisions of the instrument, it may well be

that the entire share of Jacob Seitzinger Souder would go to Mrs. Newbold. But it must be construed in connection with the rest of the will. The object to be gained by inserting the clause is manifest upon its face. It was not to establish limitations of interests devised. The rule of succession had been fixed by elaborate provisions already made. It cannot be called a repugnant clause to the clause fixing the succession, for it was not a clause relating to the succession. It was designed to deprive John K. Souder of any right which, without it, he might assert under the intestate laws. It is a well-settled principle of construction that where clauses in a will are repugnant, the last must prevail, as expressing the final determination of the testator. But to make the application of the principle safe, it should appear that the repugnant clauses have relation to the same subject-matter. In the present case, the conflicting provision relates to a subject entirely distinct from the limitations of the estate devised, for which clear and careful directions had been already given. It seems to the court that it would be an entire perversion of this will to treat the terms of exclusion of John K. Souder, however peculiarly expressed, as evincing a purpose to change, in a single contingency, the settlement of the estate as it had previously been directed. It is clear that this clause could not so operate if Mr. Souder had died before his son. To give it such an operation now would be to impute to the testator a capriciousness of intention that would be incredible. It is believed that the construction contended for by the plaintiffs would, in the language of Judge King, in Earp's Appeal, 1 Pars. 453, 'tend to destroy the symmetry of the will, and to produce results inconsistent with the whole scheme of the disposition of his property proposed to himself by the testator,' while that which has been adopted 'harmonizes all his dispositions and accomplishes all his intentions.'

" The remaining question raised by the case submitted involves no apparent difficulty. The will directed the share of Jacob Seitzinger Souder to be paid to him on the attainment of his majority. Upon his death a minor, it was to be added to the shares of his sister, uncles and aunts, 'subject to the same trusts and limitations' previously declared in relation to those shares. Mr. Newbold's interest under the will had been vested in Messrs. Richard Boone, David F. Gordon and William Wetherill, in trust for her sole and separate use during her life, she receiving the income, rents, issues and profits, free from the control of her husband, and from liability for his debts ; and upon her death in trust for certain appointees she was authorized to make by will. Mr. Boone, the defendant, represents this trust, and as trustee holds the fund in controversy. Upon the assumption that the view of the court on the main question is sustainable, the plaintiffs are entitled to

no part of the principal of the fund. Mrs. Newbold's share of the principal of the estate of her brother under the will remains during her life subject to the trust. She has a right to participate in the income and interest with the sons and daughters of the testator, each of them taking two eleventh parts, and she taking one.

"The fund in the hands of the defendant representing the income of the share of Jacob Seitzinger Souder under the will of his grandfather, is to be ascertained under the terms of the case stated by the parties; and thereupon judgment in favour of the plaintiffs for the interest of one-eleventh part of the fund in the hands of the defendant as mentioned in the case stated. Amount to be ascertained by the parties."

The errors assigned were, that the judge erred :—

1. In not entering judgment in favour of the plaintiff upon the case stated, for the entire share of the estate of Jacob W. Seitzinger, deceased, which, in his will, was devised and bequeathed to Jacob Seitzinger Souder, now deceased.

2. In deciding that the trust created by the will applied to and affected the estate which passed to Mrs. Newbold upon the decease of her brother, the said Jacob Seitzinger Souder.

*Theodore Cuyler*, for plaintiff in error.—The cardinal thought of the testator was to preserve an exact equality amongst the six branches of his family. That the share of her deceased brother was to pass to Mrs. Newbold is clear : 1st. From an intent to divide the estate equally amongst the six branches, and that Mrs. Souder's children should represent one branch. A construction which would destroy this symmetry cannot be allowed, unless the language be so clear that there is no escape. 2d. The testator, in the contingency which has occurred, has by express words given Jacob's share to his sister—by providing that all the gifts to the children of his daughter, shall, in case of the death of either intestate in the lifetime of their father, go as if their mother had lived until then, and died the absolute owner of the property given. The meaning of this is too clear for doubt. It is the closing provision so far as the question here is concerned. Any previous inconsistent clauses must give way : German *v.* German, 3 Casey 116 ; Stickle's Appeal, 5 Id. 234. A particular intent must be sacrificed to a general intent with which it is inconsistent: Hitchcock *v.* Hitchcock, 11 Casey 393 ; Walker *v.* Walker, 4 Id. 40 ; Rewalt *v.* Ulrich, 11 Harris 388 ; Malone *v.* Dobbins, Id. 296.

But there is no inconsistency ; any other construction would be inconsistent with the general intent, for it would defeat the plan of making each branch equal, and take away nearly half the share of his deceased daughter, Mrs. Souder.

[Newbold v. Boone.]

The clause providing for the division of the share of the grand-child, in case of his death as mentioned, amongst the testator's children and grandchildren, must be interpreted so as to harmonize with the general intent of the will. It can and should be interpreted to provide for such division only in case *both* grand-children should so die.

3d. The allotment by appraisers of a twelfth to each of Mrs. Souder's children, may be united in one allotment of two-twelfths to both; showing further, that these children were to take their mother's share.

4th. The gift is to Jacob, his *heirs, executors, administrators and assigns*, subject during minority to be held by a trustee. This makes the gift to Jacob absolute; the trusteeship existing only during minority.

5th. Mrs. Newbold takes the share of her brother, just as if her mother had owned it and died a widow intestate. It is, therefore to be received by her directly, divested of any trust.

*H. W. Smith*, for defendant in error.—The last clause but one of the will on which the plaintiffs rely, was merely to cut off the father and leave the rest of the will untouched; this construction gives effect to every part of the will. In other bequests the testator has directed, in case of the death of one of the children of another daughter, that the share should go to the survivors: if he had designed so here he would have so said. Certainty, and not equality, was the testator's object. He frequently declares that no absolute interest shall vest in Jacob. The words as to the disposition of Jacob's share in the contingency which has occurred, is explicit.

The argument of the judge below is adopted as part of the argument of the defendant in error.

The opinion of the court was delivered, March 19th 1866, by

AGNEW, J.—Jacob Seitzinger Souder, son of Ann Ellen Souder, a deceased daughter of Jacob W. Seitzinger, the testator, died a minor, unmarried and intestate—leaving his sister, Mary Agnes Souder, now Newbold, and his father, John K. Souder, surviving him. This question is, what becomes of his share under the will of his grandfather, the testator. Mrs. Newbold claims it all under the last paragraph but one of the will, and the trustee claims it for the children and grandchildren under the fifth paragraph preceding the last. The last-mentioned paragraph reads thus :—

" If any or either of my said children, or two last-named grandchildren (the children of Mrs. Souder), shall die without issue living at his, her or their respective deaths, or leaving issue then living none of whom shall live to attain the age of twenty-one years, then and in every such case it is my will that

the shares or portions of my estate of him, her or them so dying, shall go to increase the said shares of my other children (except my daughter Elizabeth) and two last-named grandchildren, in the last-mentioned proportions; that is to say, the share of such of my said children (other than Elizabeth) to be twice as great as those of my said two grandchildren, the children of my deceased daughter, under and subject in such cases to the same respective trusts and limitations hereinbefore expressed and declared."

The other paragraph (last but one in the will) reads thus:—

" It is my will that the subject of all and every devise and bequest, specific, particular, general or residuary, hereinbefore contained, to or in trust for or in favour of any child or children or issue of my deceased daughter, Ann Ellen Souder, shall upon the death intestate of any such child or issue of the said Ann Ellen in the lifetime of her husband, John K. Souder, pass to and vest in such person or persons and for such estate or estates, as would then have taken or been entitled to the same, if my said deceased daughter had lived until then, and had then died the absolute owner of the same, a widow and intestate."

If these clauses are in irreconcilable conflict, we are compelled to adopt the latter as the latest expression of the testator's mind: German *v.* German, 3 Casey 116; Stickel's Appeal, 5 Id. 234; Mütter's Estate, 2 Wright 321. But this is a result never to be submitted to if it be possible to give effect to both clauses consistently with the main design of the testator. We must therefore explore the entire volume of the will to reconcile them if we can. We think this can be done. After having gone through with his whole very large estate, making the almost numberless provisions contained in this voluminous will, filling twenty printed pages, and closing it up by making the general provision for deaths among his children and grandchildren found in the former paragraph, he had one thing yet to provide for, which permeated the entire plan, and in certain contingencies would frustrate his design.

It was his misfortune to know, or at least believe (from the statement of counsel it may have been a mistake), that his elder children were illegitimate, and he therefore proceeds to say—" I desire, and it is my will, that, so far as it may be legally practicable, my family shall, after my death, stand on the same footing as if I had been formally married to my said wife before the birth of any of our said seven children."

This was his difficulty—he had provided for the deaths of his children and grandchildren, and of their issue, who should not live to the age of twenty-one; but if the issue of deceased children or grandchildren should reach that age, the estates given would vest in them absolutely, and if such issue should afterwards die without issue, the parent being illegitimate and by law

not of his own blood, the estate could not return into his own family, but must either escheat for want of inheritable blood, or pass into a new line of the blood of the last owner, but not of the blood of the testator. This was the relation in which John K. Souder stood to his own children.

It appears from the will that all of his children were minors excepting Margaret Adelia Jones and Mary Agnes Souder, both of whom had married and had children. Mrs. Souder, being either the first or second child, was doubtless one of the supposed illegitimates. Being dead, the devises and bequests were directly to her children, who by her illegitimacy became a new stock as the first perquisitors. In case of their death leaving issue who should attain the age of twenty-one, the estate then vesting in such issue absolutely, and they dying without issue, it would then not be governed by the former paragraph, but would escheat or go to John K. Souder, if alive, or his issue if dead, as the next of kin of the new stock dying seised. The testator therefore proceeds in the two sections next following (the second of which is the last but one of the will already quoted), to provide for the difficulty. He begins by saying—" So far as the rules of law against what are legally denominated perpetuities may permit, I desire to prevent the possibility of the occurrence of any escheat of my estate, real or personal, which would not have occurred or taken place if all my said children had been born in wedlock." He then provides for the continuation of the estate in the children and grandchildren and their issue " until twenty-one years after the death of the longest-lived of them, and only such issue of them or any of them who may be living at his death ;" and concludes by providing that their estates " shall then and thereupon pass to and vest in such person or persons as would then have been entitled to the same if all my said children had been begotten by me of my said wife after our marriage, and as if *I* had lived until such time or times and had *then died the owner of the same.*"

Thus by his will he made himself the stock from whom the estate came, to govern its passage by force of the will adopting the provision of the intestate law as to the illegitimates, to whom the devises and bequests were made ; but as there was no devise or bequest to Mrs. Souder, she being dead, and the estate went under the will directly to her children ; the doubt arose whether the paragraph just finished was sufficient to provide for the estate of his grandchildren, he being the *propositus* and Mrs. Souder the illegitimate link between him and them. Hence, in the next paragraph, to prevent John K. Souder, the father of Mrs. Souder's children, who by her illegitimacy became a new stock as *perquisitors*, from carrying the estate into a new line of descent, he provided that if the children of Ann Souder or *their issue* should

[Newbold *v.* Boone.]

die in the lifetime of John K. Souder, the subject of their devises and bequests should " pass to and vest in such person or persons, and for such estate or estates, as would then have taken or been entitled to the same, if my said deceased daughter (Ann Souder) had lived until then, *and had then died the absolute owner* of the same, *a widow* and intestate."

Thus, by making her the stock from whom the descent should be cast, by force of the terms of the will, he prevented the estate from passing out of the line of her blood, in case the issue of her children, having lived to take the estate absolutely by arriving at twenty-one years of age, should die without issue in the lifetime of John K. Souder. That this paragraph I have just considered is a part of the provision against the effects of the illegitimacy of some of his children, appears on the face of the will itself; for in the next and last paragraph the testator expressly links the three preceding paragraphs together, and declares that their provisions shall not prevent alienation by deed or will of the several devisees and legatees.

There are other considerations arising from the language and effect of the last paragraph but one, which are convincing that its purpose was not to create a new limitation of the estates of his grandchildren, in direct conflict with what had gone before.

This will was written by an eminent lawyer, and from its whole tenor we discover that its language is precise, technical and well weighed. Now, if he intended that on the death of one of Mrs. Souder's children his or her share should go to the survivor, how natural and easy to say so, instead of the most singular circumlocution (this being the design) of saying it should pass as if Mrs. Souder had lived to take it, and had survived her husband, John Souder. Notice also, he says the subject of the devises and bequests hereinbefore contained shall pass and vest. Not as if he intended something new, but that what he had already done should go on in a certain way, in case John K. Souder is alive at the time; that it shall pass just as if he were dead. Notice also, that he refers not only to the children of Ann Souder, but her *issue* also, manifestly not tautologically, but referring to an indefinite time of issue, a purpose comporting entirely with an intention to provide, as far as the law against perpetuity would let him, to remove the obstacle caused by her illegitimacy. It is argued against this, that his design was to preserve equality among his descendants, which the former paragraph would defeat, by giving the share of a deceased grandchild over to its aunts and uncles in shares doubly larger than that of the surviving grandchild. But this argument runs against the fact, that such is the expressed intention in the former paragraph, which must prevail if John K. Souder die first. What motives had he for the singular provision, that if he died first the estate of the grandchild should be divided

among uncles and aunts and the survivor, but if he were alive then the share should pass to the surviving grandchild ? This was as much as to say to the survivor, If your father be alive you shall have your deceased brother's or sister's share ; but if he, your natural protector, be dead, and no longer able to aid and care for you, all this share shall pass from you but a trifle. If that be the design, it exhibits the testator as capricious, changeable and acting without motive. But when we notice that the testator treats the latter clause as one of three in *pari materiâ*, and that this illegitimate being cut off by law from his blood, his estate would, after vesting in the issue of his devisees and legatees who attained majority, pass out of the former clause) reading only issue dying under age), and that by operation of the bastardy it would pass into a new line of descent, or else escheat, we can readily comprehend the effect intended by the latter clause.

The clauses being therefore reconcilable, the estate passes under the former, and the judgment must be affirmed.